SECURITY SAVINGS BANK, Appellee, v. ELENA M. CARLSON, Appellant.

No. 40170.

JUNE 23, 1930.

REHEARING DENIED SEPTEMBER 26, 1930.

*Cook & Balluff* and *Chamberlin & Chamberlin,* for appellant.

*Ruymann & Ruymann* and *Lane & Waterman,* for appellee.

KINDIG, J.—On March 2, 1925, the defendant-appellant executed her promissory note in the sum of $6,075, payable to the

plaintiff-appellee in 30 days thereafter, with interest. This suit was brought by the appellee on May 14, 1927, to recover from the appellant the amount. due on the negotiable instrument.

The principal proposition here for determination is whether a jury question. was presented by the appellant's testimony. It is contended, on the one hand, by the appellee that the record  conclusively shows its right to recover on the promissory note involved; while, on the other, the appellant insists that the evidence is in conflict, and therefore the question is one for the jury. A review of the evidence, then, is here necessary.

I. Appellee is a banking corporation, organized under the laws of Iowa, and doing business in Davenport. Appellant is a clerk or secretary, employed by one A. H. Kohlhammer, at Rock Island, Illinois. According to appellant's evidence, the Bankers Mortgage & Discount Company was operated by Kohlhammer, as manager. That institution, it is said, was not incorporated, but was financed and conducted by the appellee, Security Savings Bank, Claus J. Ruymann and Otto Eckhardt, president and cashier, respectively, of the Security Savings Bank, and the said Kohlhammer. Thus, according to the record, there were four separate interests. Apparently the business of the Bankers Mortgage & Discount Company was to deal in chattel mortgages, and especially automobile paper.

In that way the affairs of the Bankers Mortgage & Discount Company were continued until September 1, 1923, when the business was taken over by a new organization, known as the Interstate Bonding & Investment Company. Said last-named institution was a Delaware corporation, and it continued the business of the aforesaid Bankers Mortgage & Discount Company, as previously indicated. As shown by appellant's evidence, the Bankers Mortgage & Discount Company was incorporated, managed, and owned by the said C. J. Ruymann and Otto Eckhardt, president and cashier, respectively, of the appellee bank, Clarence J. Shroder, an attorney, of Rock Island, Illinois, and the said Kohlhammer. Kohlhammer, it is recalled, was the employer of appellant during all this time. Before the organization of the Bankers Mortgage & Discount Company and the Interstate Bonding & Investment Company, it is said by appellant's wit-

nesses, the officers of the appellee bank conceived the idea of a chattel security business, and broached the subject to the said Kohlhammer. Negotiations ensued, and it was finally agreed by the parties aforesaid, according to the record, that the business be launched in the manner and under the names and styles above indicated.

There was sufficient evidence for the jury to find that moneys for the chattel loan business were furnished by the appellee bank. Also, the fact-finding body could conclude, if they so desired, that the reason for thus handling such business was to keep secret the appellee bank's interest in the scheme. During all times here concerned, according to appellant's evidence, she had no interest of any kind in the appellee bank or any of the other financial institutions. She, in view of her evidence, was merely the clerk or secretary of the said Kohlhammer.

Many conferences were had, during the years here involved, between Kohlhammer and Eckhardt, who was the cashier of the appellee bank. Considerable evidence was adduced to show that Kohlhammer, in various ways, sought to and did accommodate the appellee bank. For some reason not entirely clear, appellant, on a date probably earlier than July 1, 1924, executed to the appellee bank a note for $21,550. All concede that appellant was merely the accommodation maker of that note. Whether it was for the chattel loan business or some other purpose is more or less vague. Security appears to have been given for that note, but the jury could find that such security belonged to Kohlhammer. Doubt appears whether that note was ever paid or satisfied,—at least appellant was not called upon to pay the same.

Contention is made by appellee that, for certain reasons shown in the record, the $21,550 note was only partly paid, and that the present note of $6,075 was given by appellant in lieu thereof. That, however, is denied by appellant, and appellee's evidence concerning the proposition is not direct, but circumstantial. Consequently a jury question arose as to whether the note now involved grew out of or related to the previous instrument of $21,550.

It is contended by appellant, not only that the present instrument has no relation with the previous one, but that there was no consideration of any kind or nature for the last-named

note. Appellee concedes that appellant is only an accommodation maker, but denies that she signed the note as an accommodation for it. Insistence is made by the appellee bank that appellant accommodated the Interstate Bonding & Investment Company. Continuing her defense, appellant asserts that the note in controversy was purely an accommodation for the appellee bank. Such accommodation, she says, was requested by the cashier, Eckhardt. In this appellant is corroborated by her employer, Kohlhammer. Appellant at this juncture testified:

"Mr. Eckhardt, cashier of the [appellee] bank, told me [appellant], before I signed the note [the one in suit], that he wanted me to sign a memorandum note, so that the [appellee] bank could keep their records straight, and there would be absolutely no liability on my part whatsoever if I would sign this note, because I was getting nothing out of it. There was no consideration for the note, and Mr. Eckhardt told me there was nobody getting anything out of it. I relied on what Mr. Eckhardt said, in signing the note."

Not only is appellant corroborated by her employer, Kohlhammer, in this regard, but, in addition thereto, support for her evidence is found in the fact that the appellee bank did not make demand for payment of the note for a long time after it was due. Finally, when someone in the appellee bank by writing demanded payment of appellant, Kohlhammer and Eckhardt, the cashier, reassured the appellant that there was to be no liability. Her employer, Kohlhammer, testified that the officers of the appellee bank so informed him. Kohlhammer at this place testified that Eckhardt, appellee's cashier, told him that appellant's signature was desired on this note in order to protect the bank in the event of a contemplated examination by the state banking department. Some indication, at least, is made that the appellee bank was not in especially good circumstances at the time. The record reveals that the appellant did not know of the cashier's fraudulent purpose in procuring the note from her. She was taken to the bank by Kohlhammer, and signed the note at Eckhardt's request, with the understanding that she was not to be liable thereon, according to her part of the record. Eckhardt later committed suicide, and his version of the transaction is not obtainable.

While it is true that certain collaterals were delivered to the appellee bank at the time the note was signed, yet that security was the property of Kohlhammer, and not of appellant. Obviously, appellant was acting under Kohlhammer's directions. Perhaps the jury would conclude that Kohlhammer and Eckhardt, the cashier, in carrying out the scheme to defraud the bank examiner, would desire the accommodation note to appear real and well secured. Anyway, it was a fact upon which that body should have passed judgment.

When the note was signed, appellant asked the appellee bank for a written guarantee that there would be no personal liability. Thereupon, appellee's cashier replied that she had never been called upon to pay the $21,550 note, and likewise there would be no request to pay the present instrument. Contrary to appellee's claim, there is evidence indicating that there may have been consideration for the note. For instance, in response to the letter from the bank demanding payment, appellant replied that she had a writing absolving her from liability. During her testimony, appellant stated that reference was made to a writing received when the previous $21,550 accommodation note was given. It may be she thought because of her conversation with the cashier, Eckhardt, that the previous written guarantee also covered this note. Too, the larger note, appellee said, was no longer in its possession at the time of the trial. From these incidents, appellee argues that the negotiable instrument in suit must have grown out of the balance due on the first note. One was substituted for the other, appellee argues. We have not attempted to set out all the evidence, pro and con, but have simply indicated the general trend thereof. Conclusiveness does not appear, but rather, uncertainty and conflict are evident. These conflicts, disputes, and uncertainties were matters which the jury were legally authorized to decide. Resultantly, the district court erred when it directed a verdict in appellee's favor.

II. Notwithstanding the foregoing, appellee urges that appellant cannot introduce oral testimony to overcome the absolute promise contained in the note. To put the thought in another

1122

 way, appellee says that the parol-evidence rule prevents the contradiction of the written instrument. The general application of the parol-evidence rule is well understood, and the citations of authority in explanation thereof are not necessary. But in this regard, see *Hills Sav. Bank v. Hirt*, 204 Iowa 940.

There is, however, a well-known exception to the foregoing rule. Section 9488 of the 1927 Code provides:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course * * *"

Elucidation will result from the quotation of brief excerpts from some of the cases. In *Herron v. Brinton*, 188 Iowa 60, we said:

"It [the parol evidence rule] is, as a general rule, unquestionably applicable to promissory notes, as to other written contracts. It has, however, always been held competent, as between the original parties at least, to plead and to prove want or failure of consideration by parol evidence."

Likewise, during the discussion, it was declared in *State Sav. Bank of Logan v. Osborn*, 188 Iowa 168:

"There is nothing in the Negotiable Instrument Act or in the familiar rule against parol evidence to vary the terms or legal effect of a writing which, as between the original parties, precludes plea or proof of no consideration or failure of consideration."

Again, in *First Nat. Bank of Mt. Pleasant v. Holley*, 200 Iowa 938, on pages 941 and 942, it is explained:

"The defendants testified, respectively, that, at the time of the signing [of the note], they were emphatically assured by Gillis that the note was an accommodation note, and that they would never have to pay it. This evidence is assailed in appellant's brief as being contradictory to the written promise contained in the note, and therefore inadmissible. It is clearly true that such evidence cannot ordinarily be received to contradict the written promise contained in the note. If this were not an ac-

commodation note, but were one executed for a consideration, such evidence would be inadmissible. It does not follow that such evidence may not be received as a circumstance bearing on the question as to who was the accommodated party.''

To the same effect see *Macksburg Nat. Bank v. Lillard*, 206 Iowa 950; *Oakland Cem. Assn. v. Lakins*, 126 Iowa 121; *Marsh v. Chown*, 104 Iowa 556; *Woodbury v. Glick*, 151 Iowa 648.

Here the appellant is conceded to be an accommodation maker, and appellee is an original party to the note. Appellant maintains that appellee was the party accommodated. Hence, it was proper, under the doctrine above announced, for appellant to plead and prove such fact and that there was no consideration for the instrument. She did thus plead, and it was for the jury to say whether the allegation was proven.

III. Not only is the appellant entitled to reversal because the cause was not submitted to the jury, but also because the exact amount collectible on the note was not proven by the appellee. As before stated, certain collateral security belonging to Kohlhammer accompanied the note. Under the record, that collateral was sold by the appellee bank, and the proceeds applied to reduce the alleged indebtedness. It does not appear, however, what was received by the appellee bank through the sale of the collateral. Apparently the district court credited on the note the amount suggested by appellee outside of the record. Proof, however, was not furnished to sustain such action. Appellee, having admitted receiving the security, and conceding its sale thereof, must give proper credit for the entire proceeds. Such crediting involves a showing concerning the amount received from the sale. Without that showing, the amount due cannot be determined.

For the reasons above suggested, the judgment of the district court should be, and hereby is, reversed.—*Reversed.*

MORLING, C. J., and EVANS, DE GRAFF, WAGNER, and GRIMM, JJ., concur.